IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK GUENDLING, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | No. 13 C 3535 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Frederick Guendling's claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Guendling's motion for summary judgment [Doc. No. 14] is denied, and Defendant's motion for summary judgment [Doc. No. 21] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 2, 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability since January 27, 2010. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 14, 2012. Guendling personally

appeared and testified at the hearing and was represented by counsel. Vocational Expert ("VE") Grace Gianforte also testified.

On March 5, 2012, the ALJ denied the claim, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Guendling's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.  FACTUAL BACKGROUND[1]

### A.  Background

Claimant was born on October 30, 1956 and was fifty-five years old at the time of the ALJ hearing. Guendling is about five feet eleven inches tall and weighs between 220 and 230 pounds. He has a high school education, and his relevant past experience was as a carpenter and a superintendent of construction.

### B.  Medical Evidence

Guendling injured himself on January 27, 2010, in a fall down marble stairs. His treating orthopedist, Dr. William Farrell, diagnosed him after an MRI with a tear of the medial meniscus and right knee chondromalacia. He was treated conservatively at first, then had arthroscopy performed in May 2010. An MRI in October 2010 showed a residual tear in the posterior horn of the meniscal surface as well as thinning of cartilage along patellofemoral joint lines. Dr. Farrell continued conservative treatment, including physical therapy, anti-inflammatory medication, pain medication, and injections. When this round of treatment did not relieve the

---
[1] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

symptoms, Dr. Farrell recommended a second knee scope. Because his insurance had not approved the procedure, Guendling had not had the knee scope performed before the hearing. Dr. Farrell's treatment notes reflect that Guendling is limited in his ability to kneel and squat as a result of his knee injury. In his last note, written six days before the ALJ hearing, Dr. Farrell stated for the first time that Plaintiff's knee gave him problems with weightbearing and concluded that "[h]e is unable to work." (R. 394.)

A January 7, 2010, Functional Capacity Evaluation ("FCE") performed by Jim Donahue, a Doctor of Physical Therapy, found that Guendling could stand for thirty minutes; walk for one mile; lift up to fifty pounds occasionally and twenty-five pounds frequently; climb up and down one flight of stairs; but he could not stand or crouch on a narrow beam for thirty seconds or walk on the beam for at least six feet. Dr. Donahue concluded that Guendling met the medium strength category, but he would be restricted to not pushing/pulling more than fifty pounds and he could not crouch. (R. 280.)

An April 29, 2011 independent medical examination performed by Dr. Kimberly Middleton found that Guendling was limited with regard to repetitive squatting, kneeling, operating foot pedals, and applying valgus/varus stress on the right knee, but that he was able to ambulate, sit, stand, bend, reach, lift, communicate, and use fine and gross movements with both hands. (R. 311.)

### C. ALJ Decision

The ALJ found at step one that Guendling had not engaged in substantial gainful activity since his alleged onset date of January 27, 2010. At step two, the ALJ concluded that he had severe impairments of torn medial meniscus of the right knee, and status post-arthroscopy of the right knee with partial medial meniscectomy. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. The ALJ then determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform work at the light exertional level, with additional limitations to no kneeling or crouching. The ALJ concluded at step four that Claimant could not perform his past relevant work. At step five, based upon the VE's testimony and Claimant's age, education, work experience, RFC, and work skills acquired from past relevant work, the ALJ concluded that Claimant can perform jobs existing in significant numbers, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant

presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its

judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v.*

*Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

**III. ANALYSIS**

Claimant argues that the ALJ's decision was in error because: (1) it improperly weighed the opinion of Dr. Farrell, his treating physician; (2) it did not consider the impact of obesity on his knee impairment; and (3) it committed an error of fact in finding that Plaintiff had transferrable skills.

**A.** <u>**Treating Physician Rule**</u>

Claimant argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physician, Dr. Farrell. Guendling also criticizes the ALJ for giving more weight to the opinion of Dr. Jim Donahue, an examining physical therapist. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the

7

treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

The ALJ gave some weight to Dr. Farrell's opinion that Guendling would be limited in his ability to kneel; little weight to his opinion that he would be limited to minimal ambulation; and little weight to his opinion that Plaintiff should remain off work or was limited to sedentary/light work. Plaintiff faults the ALJ for failing to discuss the length, nature, or extent of his treating relationship with Dr. Farrell, who he saw twenty-seven times over two years, with one surgery. It is true that, in concluding that in evaluating Dr. Farrell's opinion, the ALJ did not explicitly mention the factors discussed above. There is some disagreement within in the Seventh Circuit as to whether or not an ALJ's failure to explicitly discuss all the factors in a decision requires remand on its own. *Compare Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (remanding where "[t]he ALJ's decision indicate[d] that she considered opinion evidence in accordance with §§ 404.1527 and 416.927" but did not "explicitly address the checklist of factors as applied to the medical opinion evidence") *with Schreiber v. Colvin*, 519 Fed. App'x 951, 959 (7th Cir. 2013) (finding ALJ opinion sufficient where, "while the ALJ did not explicitly weigh each factor in discussing [the doctor's conclusion], his decision makes clear that he was aware of and considered many of the factors"); *see also Duran v. Colvin*, No. 13-CV-50316, 2015 WL 4640877, at *8 (N.D. Ill. Aug. 4, 2015) (discussing split in authority). In this case, Plaintiff has failed to demonstrate that the ALJ's failure to

8

conduct a factor-by-factor analysis would have changed the outcome. The ALJ concluded that Dr. Farrell's opinions describing completely disabling symptoms were not consistent with the medical record. Indeed, Dr. Farrell's medical notes consistently describe limitations on kneeling and squatting only; they do not provide any rationale for limited ambulation or otherwise restrict Guendling to sedentary work. The ALJ also found that Plaintiff's claims that he was limited to sedentary work were inconsistent with his daily activities, which include doing chores, mowing the lawn, traveling, and golfing (even though Plaintiff attempted to minimize this activity by stating that he had a handicap sticker on his golf cart).

In addition, the ALJ believed that Dr. Farrell's statements about work limitations were made with reference to the requirements for Guendling's past work as a carpenter, and therefore were to be given little weight with respect to his ability to work at all. Although Plaintiff is correct that in his October 2011 note, Dr. Farrell states that Guendling "should not return to work until I have released him, despite what the job," (R. 374), the record is replete with references Dr. Farrell makes to Plaintiff's impairments as they relate to his past employment. For example, in the same October 2011 note, Dr. Farrell states that the opinion of the independent consultant, which stated that Plaintiff could return to duty but should avoid kneeling "presents a problem in and of itself." (R. 374.) Other notes similarly opine that his disability is specifically related to his inability to kneel and squat, which Dr. Farrell believed made him wholly disabled due to the nature of his employment. For example, in May and June 2011, he found the consultant's

9

conclusion that Plaintiff could return to work with a kneeling and squatting restriction to be "not practical nor feasible at this point in time" because "[u]nfortunately his job is carpentry," (R. 378-79); and he reported in April 2011 that "[h]is job necessitates kneeling and squatting. Unfortunately, this has precluded his ability to return back to regular duty at this point." (R. 381). Furthermore, the ALJ was not required to credit Dr. Farrell's opinion that "[h]e is unable to work," (R. 394), because the ultimate issue of disability is reserved to the Commissioner. *See Clifford*, 227 F.3d at 870. Because Dr. Farrell's opinions about Guendling's inability to work were not supported by evidence of functional limitations other than those reflected in the RFC, the ALJ's decision will not be disturbed.

Guendling also finds error in the ALJ's decision to give weight to the FCE evaluation performed by Dr. Donahue, who is a physical therapist and therefore not an "acceptable medical source" under the regulations. *See* 20 C.F.R. § 404.1513(a). Plaintiff is correct that a physical therapist is not listed as an acceptable medical source to establish whether a claimant has a medically determinable impairment, but the regulations do allow evidence from "other sources," including physical therapists, to determine the severity of any impairment and its effect on the claimant's ability to work. *See* 20 C.F.R. § 404.1513(d)(1). The ALJ did not use Dr. Donahue's opinion to discern whether Guendling had an impairment, but rather to determine the severity of his impairment and its effect on his work abilities.

B.  **Obesity**

Plaintiff next contends that the ALJ erred by failing to consider his obesity as a medically determinable impairment or as it affected his RFC. The Social Security Administration "has removed obesity as a separate listing from the list of disabling impairments." *Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010) (citing SSR 02-1p).[2] However, the ALJ is required to consider a claimant's obesity in evaluating the severity of his other impairments. *Id.*; *see also Martinez v. Astrue*, 630 F.3d 693, 689-99 (finding reversible error when the ALJ failed to consider the effect of a body mass index of over 40 on knee pain). The Seventh Circuit also requires an ALJ to consider a claimant's obesity in evaluating her ability to work generally. *See Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014) (explaining that morbid obesity may make a person unable to perform even sedentary jobs).

Plaintiff points out that his body mass index ("BMI") has ranged from 30.7 to 32.1, which is at the lower end of the obese range. *See* SSR 02-1p. However, he has failed to argue what, if any additional functional restrictions his obesity causes, other than those already identified by the ALJ. A "claimant must articulate how her obesity limits her functioning and exacerbates her impairments. . . . This court has repeatedly excused the harmless error of an ALJ who fails to explicitly address a claimant's obesity but arrives at a final decision after reviewing the medical opinions of physicians familiar with the claimant's obesity." *Hisle v. Astrue*, 258 F. App'x 33, 37, 2007 WL 4439843, at *4 (7th Cir. 2007) (unpublished decision).

---

[2] Interpretive rules, such as Social Security Rulings ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

11

Guendling has not explained how his obesity affects his impairments or that it was not taken into account by the examiners, and therefore the ALJ's failure to address it in detail was at best harmless error.

### C. <u>Transferability of Skills</u>

Finally, Plaintiff argues that the ALJ committed an error of fact in finding that he had obtained transferrable skills in his previous employment. Pursuant to SSR 82-41, "[t]ransferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41. Based on Guendling's past relevant work as a carpenter, the VE testified that he had obtained transferrable skills of the use of hand tools and power equipment; matching and gathering boards of specific grain color and width to form panels; setting up and operating a bench mounted spindle-carving machine; and operating a band-saw to saw or carve irregular designs on wood stock. The VE further testified that with those transferrable skills, Guendling could perform the following jobs at the light level, which exist in significant numbers in the regional economy: panel lay worker, spindle carver, and band scroll saw operator.

According to Plaintiff, the ALJ was required to ask Guendling at the hearing whether he had actually obtained any of the listed skills, and by failing to do so, her finding that he could use these skills in other jobs was in error. The case cited by Plaintiff is inapposite, because that ALJ's decision did not list any of the allegedly acquired skills, and it failed to explain whether the skills were similar to those

required for other employment. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). By contrast, the ALJ listed specific skills Guendling had obtained and the jobs in which those skills can be used. The Court also notes that at the hearing, counsel did not elicit any testimony from Guendling suggesting that he had not obtained those skills, and his brief in support of summary judgment also makes no such claim. Furthermore, although Plaintiff is correct that the description of Carpenter in the Dictionary of Occupational Titles lists numerous skills, some of which he may not have actually obtained in his prior employment, the skills cited by the VE – *e.g.*, the use of hand tools and matching boards – are not so unusual that the ALJ's decision to find he could perform them is unsupported on its face. The Court concludes that the ALJ's finding of transferrable skills is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff Frederick Guendling's motion for summary judgment [Doc. No. 14] is denied, and Defendant's motion for summary judgment [Doc. No. 21] is granted.

**SO ORDERED.**  **ENTERED:**

*/s/ Maria Valdez/*

**DATE:   October 30, 2015**     _____
                                 **HON. MARIA VALDEZ**
                                 **United States Magistrate Judge**